# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| JESSICA COREN HENDRIX, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No.: 5:18-cv-00646-SGC |
| SOCIAL SECURITY ADMINISTRATION, Commissioner, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

The plaintiff, Jessica Coren Hendrix, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Supplemental Security Income ("SSI"). Hendrix timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C § 1383(c)(3). For the reasons discussed below, the Commissioner's decision is due to be reversed and remanded.

## I. Procedural History

Hendrix has a high school education and no past relevant work. (Tr. at 26, 154). In her application for SSI, Hendrix alleged she became disabled on September 1, 2012, due to high blood pressure, depression, seizures, a neurological disorder,

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 11).

1

and swollen and enlarged blood vessels fused together on the right side of her brain. (*Id.* at 51). Hendrix later amended the onset date of her disability to March 16, 2015. (*Id.* at 139). After her claim was denied, Hendrix requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 69). Following a hearing, the ALJ denied Hendrix's claim. (*Id.* at 22-27). Hendrix was twenty-one years old when the ALJ issued her decision. (*Id.* at 27, 51). After the Appeals Council denied review of the ALJ's decision (*id.* at 1-3), that decision became the final decision of the Commissioner, *see Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Hendrix commenced this action. (Doc. 1).

## II. **Statutory and Regulatory Framework**

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. § 416.920(a)(4).

First, the Commissioner must determine whether the claimant is engaged in

2

"substantial gainful activity." *Id.* at § 416.920(a)(4)(i). If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled. *Id.* at § 416.920(a)(4)(i) and (b). At the first step, the ALJ determined Hendrix has not engaged in substantial gainful activity since March 16, 2015, the date corresponding to the alleged onset of her disability and the submission of her application for SSI. (Tr. at 24).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled. *Id.* at § 416.920(a)(4)(ii) and (c). At the second step, the ALJ determined Hendrix has the following severe impairments: hypertension, seizure disorder and migraines without aura due to a subdural hematoma, and drug-induced rebound headaches. (Tr. at 24).[2]

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §

---

[2] The ALJ determined Hendrix's nevus of the face and nicotine dependence are non-severe impairments, and that her alleged depression is a non-medically determinable impairment. (Tr. at 24).

3

416.920(a)(4)(iii). If the claimant's impairment meets or equals one of the Listings, the Commissioner will find the claimant is disabled. *Id.* at § 416.920(a)(4)(iii) and (d). At the third step, the ALJ determined Hendrix does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings. (Tr. at 24).

If the claimant's impairment does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R § 416.920(e). At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at § 416.920(a)(4)(iv) and (e). If the claimant is capable of performing his or her past relevant work, the Commissioner will find the claimant is not disabled. *Id.* at § 416.920(a)(4)(iv).

Before proceeding to the fourth step, the ALJ determined Hendrix has the RFC to perform light work with the following limitations: she can only occasionally climb ramps and stairs, bend, stoop, kneel, crouch, balance, and crawl; she can never climb ladders, ropes, or scaffolds; she can have only occasional exposure to fumes, odors, dust, poor ventilation, extreme heat, extreme cold, and vibrations; and she can have no exposure to hazardous machinery or unprotected heights. (Tr. at 25). At the fourth step, the ALJ determined Hendrix has no past relevant work. (*Id.* at 26).

If the claimant is unable to perform his or her past relevant work – or, as in

this case, has no past relevant work – the Commissioner must finally determine whether the claimant is capable of performing work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v) and (g)(1). If the claimant is capable of performing other work, the Commissioner will find the claimant is not disabled. *Id.* at § 416.920(a)(4)(v) and (g)(1). If the claimant is not capable of performing other work, the Commissioner will find the claimant is disabled. *Id.* at § 416.920(a)(4)(v) and (g)(1).

At the fifth step, considering Hendrix's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Hendrix can perform, such as those of counter attendant, concession attendant, and information clerk. (Tr. at 26-27). Therefore, the ALJ concluded Hendrix is not disabled. (*Id.* at 27).

### III. **Standard of Review**

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner.

5

*Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

**IV. Discussion**

On appeal, Hendrix argues the ALJ (1) failed to fully and fairly develop the record, which did not include a medical opinion regarding Hendrix's functional abilities, and (2) impermissibly "played doctor" in interpreting the evidence. (Doc.

13). In the context of the second argument, Hendrix claims the ALJ improperly discredited her testimony regarding her pain and other subjective symptoms by determining decreased doctors' visits indicated improvement in her condition without considering her testimony regarding her inability to afford medical treatment. (*Id.* at 13-14).

**A. RFC Determination**

An ALJ cannot usurp the role of a physician by making medical findings. *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 543 (11th Cir. 2016) (citing *Marbury v. Sullivan*, 957 F.2d 837, 840 (11th Cir. 1992)). However, determination of a claimant's RFC is not a medical determination; it is a determination for an ALJ, not a doctor. 20 C.F.R. § 416.946(c); *Moore v. Soc. Sec. Admin., Com'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010). Therefore, an ALJ is not required to obtain a medical opinion regarding a claimant's functional abilities. *Dodson v. Colvin*, 2014 WL 2465304, at *5 (N.D. Ala. June 2, 2014) (citing *Langley v. Astrue*, 777 F. Supp. 2d 1250, 1261 (N.D. Ala. 2011); *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923-24 (11th Cir. 2007)). What is required is that the ALJ fully and fairly develop the record, such that substantial evidence supports his or her determination of a claimant's RFC. *See Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014) (holding district court erred by ordering ALJ to obtain consultative examination, where record was fully and fairly

7

developed and substantial evidence supported determination of claimant's RFC); *Ingram*, 496 F.3d at 1269 ("The [ALJ] has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision."); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (noting ALJ's duty to fully and fairly develop record).

In determining a claimant's RFC, an ALJ must consider the claimant's testimony of pain or other subjective symptoms. 20 C.F.R. § 416.945(a)(3); SSR 96-8p. An ALJ may discredit a claimant's testimony regarding pain or other subjective symptoms provided he or she clearly articulates explicit and adequate reasons for doing so. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991); *Taylor v. Acting Comm'r of Soc. Sec. Admin.*, 2019 WL 581548, at *2 (11th Cir. 2019) (citing *Dyer*, 395 F.3d at 1210)). In evaluating a claimant's testimony regarding the intensity, persistence, and limiting effects of his symptoms, an ALJ considers all available evidence, including objective medical evidence; the type, dosage, and effectiveness of medication taken to alleviate symptoms; and treatment other than medication received to relieve symptoms. 20 C.F.R. § 416.929(c).

Moreover, while failure to seek treatment is an appropriate consideration in evaluating a claimant's subjective testimony, an ALJ cannot draw an adverse inference from a claimant's failure to seek treatment without considering

8

explanations. *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (citing *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)); *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267-68 (11th Cir. 2015); SSR 16-3p. For example, poverty excuses a claimant's failure to comply with recommended treatment. *See Ellison*, 355 F.3d at 1275 (citing *Dawkins*, 848 F.2d at 1213); *Henry*, 802 F.3d at 1268; SSR-16-3p.

Throughout her first pregnancy, Hendrix experienced headaches with nausea and vomiting. (Tr. at 267-70, 272-76, 298-302). In February 2013, at twenty-one weeks gestation, she was admitted to the hospital after presenting with an intense right-sided headache and the inability to open her right eye. (*Id.* at 269-70). She was diagnosed with a right intracranial hypervascularity (i.e., a congested right cavernous sinus), believed to be related to a congenital facial nevus (i.e., birth mark) and to physiologic increase in blood volume during pregnancy. It was further believed the hypervascularity caused right third cranial nerve palsy. (*Id.* at 328, 349-52). She had an emergency Caesarean section on May 31, 2013, after developing eclampsia and experiencing a seizure. (*Id.* at 285, 473).

Hendrix was readmitted to Athens-Limestone Hospital on or about June 5, 2013, with fever, malaise, and high blood pressure. After developing a headache with left-sided numbness and experiencing two seizures, a brain MRI revealed a right temporal intracerebral hemorrhage. At that point, Hendrix was transferred to

9

the University of Alabama at Birmingham Hospital, where she remained hospitalized for approximately one week until her pain and blood pressure were under control. (*Id.* at 285, 291, 307, 324, 473, 485).

A brain MRI performed on July 30, 2013, showed Hendrix's hemorrhage had resolved. (*Id.* at 329). However, Hendrix reported ongoing headaches and double vision at that time. (*Id.* at 328). Hendrix was treated for headaches at the Athens-Limestone Hospital Emergency Department approximately twenty-two times between July 2013 and September 2016. (*Id.* at 412-21, 429-71, 570-73, 583-92, 597-99, 604-15).

Hendrix presented to a neurologist at the Kirklin Clinic at the University of Alabama at Birmingham in April 2016, complaining of frequent headaches. (*Id.* at 642). The neurologist noted Hendrix's pain was "generally more constant," with waxing and waning nausea, as well as light and noise sensitivity at times. (*Id.*). He documented that he thought a good number of Hendrix's headaches were "rebound" headaches attributable to over-the-counter medication and instructed her to reduce those medications. (*Id.* at 644). When Hendrix returned for a follow-up appointment in May 2016, she told the neurologist she was "about the same." (*Id.* at 645). The neurologist changed Hendrix's prescription medication and discussed the possibility of pain management in the future pending a clinical course of treatment. (*Id.* at 645, 647). Although the neurologist instructed Hendrix to return in one month (*id.* at

647), there is no record of a follow-up visit.

During the hearing before the ALJ in January 2017, Hendrix testified she continues to experience daily, constant migraines of varying intensity, with such associated symptoms as dizziness. (*Id.* at 42-43). She further testified over-the-counter pain medication does not help and that lying down in a dark room and using an ice pack provides limited relief. (*Id.* at 42-43).

Hendrix also testified she worked at Custom Polymers for one month in April 2016, but that she was sent home after she had a nose bleed at work caused by high blood pressure. (*Id.* at 40). Her employer would not allow her to return until her doctor released her to work with no restrictions, and her doctor would only send work excuses. (*Id.*). Moreover, when she applied for other jobs, she was told she was not hirable because employers were worried about complications of her medical conditions occurring at work. (*Id.* at 40-41).

The ALJ determined Hendrix's medically determinable impairments could reasonably be expected to produce her alleged symptoms but that Hendrix's statements regarding the intensity, persistence, and limiting effects of those symptoms are not entirely consistent with the medical and other evidence. (*Id.* at 25). In discrediting Hendrix's testimony she is dizzy most of the time due to migraines, the ALJ noted Hendrix generally did not report this symptom to her treating physicians. (*Id.* at 26). That is not an unfair characterization of the evidence.

In discrediting Hendrix's allegation of disability due to seizures, the ALJ characterized the evidence as showing a relatively limited number of seizures that have declined in frequency over time. (*Id.*). This is not an unfair characterization, either. The medical evidence indicates Hendrix's first seizure in May 2013 was related to complications experienced during her first pregnancy and the records document only three additional seizures between that time and December 2014, the last of which Hendrix reported was related to her consumption of diet pills. (*Id.* at 26, 491). While Hendrix testified during the hearing before the ALJ that she had an additional seizure in or around December 2016, she described that episode as only a partial seizure. (*Id.* at 41).

In discrediting Hendrix's allegations regarding her headaches, the ALJ relied on an inference Hendrix's headaches had improved over time. (*Id.* at 25-26). This inference was drawn from the observation Hendrix's visits to medical providers and emergency departments decreased during the relevant period. (*Id.* at 25-26). However, the ALJ did not address possible explanations for Hendrix's failure to seek treatment with the same rate of frequency, including the possibility Hendrix stopped seeking treatment as often as she had in the past because she could not afford to do so. The undersigned notes Hendrix testified during the hearing that she stopped treating with a neurologist after she lost her Medicaid coverage. (*Id.* at 42). Additionally, in a letter submitted after the ALJ entered her decision, Hendrix stated

12

her visits to medical providers and emergency departments decreased not because her pain has improved but, rather, because she cannot afford these visits. (*Id.* at 16-17). Absent consideration of this possible explanation, the ALJ erred in relying on Hendrix's decreased visits to medical providers and emergency departments for the purpose of discrediting her testimony regarding pain and other subjective symptoms associated with her headaches. *See Ellison*, 355 F.3d at 1275 (citing *Dawkins*, 848 F.2d at 1213); SSR-16-3p. The error was not harmless because the ALJ did not articulate independently adequate reasons for discrediting the testimony. *See Ellison*, 355 F.3d at 1275 (holding ALJ's failure to consider claimant's ability to afford recommended medical treatment did not constitute reversible error where ALJ discredited claimant's allegations of disability based primarily on factors other than noncompliance with that treatment); *Beegle v. Soc. Sec. Admin, Comm'r*, 483 F. App'x 483, 487 (11th Cir. 2012) (citing *Ellison* for the general proposition).

### B. Appropriate Remedy

In *MacGregor*, the Eleventh Circuit held that where an ALJ fails to articulate reasons for discrediting a claimant's testimony regarding his or her subjective symptoms, that testimony must be accepted as true. 786 F.2d at 1054. In *Hale*, the court noted that implicit in *MacGregor's* holding is the requirement that articulated reasons for discrediting a claimant's testimony be supported by substantial evidence. 831 F.2d at 1012. Accordingly, the court held that where an ALJ's reasons for

discrediting a claimant's testimony are not supported by substantial evidence, that testimony must be accepted as true. *Id.* The Eleventh Circuit has subsequently declined to apply the holding of *MacGregor* on the ground its decisions preceding *MacGregor* remanded cases upon finding an inadequate credibility determination. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (citing *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984); *Wiggins v. Schweiker*, 679 F.2d 1387, 1390 (11th Cir. 1982)); *Davis v. Comm'r of Soc. Sec.*, 449 F. App'x 828, 833 n.1 (11th Cir. 2011) (citing *Wiggins*); *see also Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (11th Cir. 2000) (explaining that where two Eleventh Circuit panel decisions are in conflict, the earliest in time controls). On the persuasive authority of *Lawton* and *Davis*, remand is the appropriate remedy for the ALJ's error in evaluating Hendrix's testimony regarding her pain. *See also Iheanacho v. Berryhill*, 2018 WL 4680173, at *2 (N.D. Ala. Sept. 28, 2018) (remanding case after concluding ALJ's negative credibility finding was not supported by substantial evidence).

## V. <u>Conclusion</u>

Having reviewed the administrative record and considered all the arguments presented by the parties, the undersigned find the Commissioner's decision is not in accordance with applicable law or supported by substantial evidence. Therefore, the decision is due to be reversed and remanded for further consideration. A separate

order will be entered.

**DONE** this 30th day of September, 2019.

_/s/ Staci G. Cornelius_
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE